UNITED STATES OF AMERICA ex rel.
DONNA MYERS, AND DONNA MYERS,
individually,

        Plaintiff,

        v.

AMERICA'S DISABLED HOMEBOUND, INC.;
BENCHMARK HEALTH CORP.; ROBERT M.
KAPLAN; RICHARD ANSFIELD; SCOTT
SCHNEIDER,

        Defendants.

No. 14 C 8525

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Donna Myers worked as a nurse for America's Disabled Homebound, Inc. ("ADH"), which is a home physician service. She alleges that ADH; its president, Richard Ansfield; its chief operating officer, Scott Schneider; its employee Dr. Robert Kaplan; and Benchmark Health Corp., another home physician service of which Ansfield is the president, falsely certified that certain patients were homebound in order to receive reimbursement from Medicare for their services in violation of the False Claims Act ("FCA"). She also alleges that Defendants violated the FCA by requiring her to use Medicare billing codes for patient visits of a greater duration than she actually provided. In addition to her FCA claims, Myers alleges that she was fired in violation of the Illinois Whistleblower Act when she refused to follow Defendants' instructions for visiting patients and recording the treatment

services she provided because she believed those instructions violated federal regulations. Defendants have moved to dismiss Myers's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 38; R. 41; R. 44; R. 49. For the following reasons, those motions are denied in part and granted in part.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

Additionally, it is well established that the FCA "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 998 (7th Cir. 2014). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." "The reference to 'circumstances' in the rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff [.]" *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705 (7th Cir. 2015); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) ("particularity . . . means the who, what, when, where, and how"). Nevertheless, courts should not "take an overly rigid view of the formulation," and the "requisite information . . . may vary on the facts of a given case." *Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011). Thus, although plaintiffs "'are not absolutely required to plead the specific date, place, or time of the fraudulent acts,'" they "still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting 2 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 9.03[1] [b], at 9-18 (3d ed. 2010)). Rule 9(b) requires a "plaintiff to do more than the usual investigation before filing [a] complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or

other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted).

**Background**

The relevant Medicare regulations provide the following:

For a patient to be eligible to receive home health services under Part A and Part B, the law requires that a physician certify in all cases that the patient is confined to his/her home. For purposes of the statute, an individual shall be considered "confined to the home" (homebound) if the following two criteria are met:

1.   *Criterion One*:

The patient must either:

  -   Because of illness or injury, need the aid of supportive devices such as crutches, canes, wheelchairs, and walkers; the use of special transportation; or the assistance of another person in order to leave their place or residence

      OR

  -  Have a condition such that leaving his or her home is medically contraindicated.

  If the patient meets one of the *criterion one* conditions, then the patient must ALSO meet two additional requirements defined in *criterion two* below.

2.   *Criterion Two*:

  - There must exist a normal inability to leave home;

  AND

  -   Leaving home must require considerable and taxing effort.

\*     \*     \*     \*

If the patient does in fact leave the home, the patient may nevertheless be considered homebound if the absences from the home are infrequent or for periods of relatively short duration, or are attributable to the need to receive health care treatment.

\* \* \* \*

Any absence of an individual from the home attributable to the need to receive health care treatment, including regular absences for the purpose of participating in therapeutic, psychosocial, or medical treatment in an adult day-care program that is licensed or certified by a state, or accredited to furnish adult day-care services in a state, shall not disqualify an individual from being considered to be confined to his home. Any other absence of an individual from the home shall not so disqualify an individual if the absence is of an infrequent or of relatively short duration. For purposes of the preceding sentence, any absence for the purpose of attending a religious service shall be deemed to be an absence of infrequent or short duration.

\* \* \* \*

However, occasional absences from the home for nonmedical purposes, e.g., an occasional trip to the barber, a walk around the block or a drive, attendance at a family reunion, funeral, graduation, or other infrequent or unique event would not necessitate a finding that the patient is not homebound if the absences are undertaken on an infrequent basis or are of relatively short duration and do not indicate that the patient has the capacity to obtain the health care provided outside rather than in the home.

\* \* \* \*

The aged person who does not often travel from home because of feebleness and insecurity brought on by advanced age would not be considered confined to the home for purposes of receiving home health services unless they meet one of the above conditions.

*See* Medicare Benefit Policy Manual, Chapter 7 – Home Health Services, Part 30.1.1

– Patient Confined to the Home, available at https://www.cms.gov/Regulations-and-

Guidance/Guidance/Manuals/Downloads/bp102c07.pdf (last visited Mar. 22, 2018).

Myers alleges that Defendants sought reimbursement for services provided to "homebound" patients, even though those patients were not in fact homebound. Myers alleges that she has personal knowledge of these patients' conditions and knows that they were not homebound when Defendants sought Medicare reimbursement on that basis. For five of the patients (identified by a number beginning with "DM"), Myers makes the following specific allegations about their conditions in an effort to show that they were not homebound:

> DM20A suffers from Multiple sclerosis, and uses a cane but is not homebound and goes to the health club at least once a week.

> DM21A is an usher at his church and drives a friend's children to school.

> DM35 was seen by Relator on March 24, 2014. When Relator arrived for her home health visit with DM35, DM35 was not home. When DM35 arrived home, DM35 had walked several blocks with two turkeys on his/her walker.

> DM14 is not homebound and goes to a clinic on a bus for all of his/her medical needs.

> DM17 is not homebound, drives to work, the grocery store, and church.

R. 13 ¶¶ 48-49, 52, 54-55. Myers also alleges that Defendants sought Medicare reimbursement for seven additional patients who she alleges were not homebound. She does not make detailed allegations about their conditions, but merely alleges that they are "not homebound." *Id.* ¶¶ 57-67.

## Analysis

Liability under the FCA can be predicated on a number of acts, including as relevant to Myers's claims: "knowingly present[ing], or caus[ing] to be presented, a

false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A) (Count I); "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim," § 3729(a)(1)(B) (Count II); or "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government," § 3729(a)(1)(G) (Count III). Myers claims that Defendants violated these three provisions by falsely certifying that certain patients were homebound, *see* R. 13 ¶¶ 47-70, and by "up-coding" claims for payment to show that she spent more time with the patient than she actually did, *id.* ¶ 46. Myers also claims that her eventual refusal to comply with Defendants' instructions to falsify records led to her termination in violation of the Illinois Whistleblower Act (Count IV).

## I. False Statements and Records versus Concealment of Obligations (Counts I & II versus Count III)

Subsection (G) of § 3729(a)(1) prohibits concealing an obligation to pay money to the government. This is what is known as a "reverse false claim," because rather than fraudulently *receiving* money from the government, the defendant fraudulently *retains* money it is obligated to pay to the government. In Counts I and II, Myers alleges that Defendants received money from the government through false claims and records. In Count III, she also alleges that Defendants fraudulently retained money it had an obligation to pay to the government. But Myers has not alleged that Defendants had an obligation to pay money or property to the

government separate from the money they received via fraudulent statements and records. Rather, she alleges that by overbilling the government and then retaining those payments, Defendants avoided an obligation to return those payments. *See* R. 13 ¶ 68.

A number of district courts have held, however, that when a claim brought pursuant to subsection (G) (like Myers's Count III) is based on the same submissions of false statements and records underlying claims brought pursuant to subsections (A) and (B) (like Myers's Counts I and II), the subsection (G) reverse false claim should be dismissed as redundant of the subsection (A) and (B) claims. *See*, *e.g.*, *U.S. ex rel. Besancon v. Uchicago Argonne, LLC*, 2014 WL 4783056, at *4 (N.D. Ill. Sept. 24, 2014) ("[U]nder [the plaintiff's] theory whenever there is a violation under § 3729(a)(1)(A) for a defendant's receipt of payment of a false claim, there would also be a violation of § (a)(1)(G) for failing to return the overpayment. That, of course, would make § (a)(1)(G) redundant to § (a)(1)(A), which is not the intent of the statute."); *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 97 (D.D.C. 2014) ("But by this logic, just about any traditional false statement or presentment action would give rise to a reverse false claim action; after all, presumably any false statement actionable under section 3729(a)(1)(A) or 3729(a)(1)(B) could theoretically trigger an obligation to repay the fraudulently obtained money."); *United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 339 (S.D.N.Y. 2004) ("Close examination of these claims leads to the inescapable conclusion that they are redundant—two ways of describing the same transaction.

Because [the plaintiff's] allegations state a claim under sections 3729(a)(1) [subsections (A) and (B)], they cannot also form the basis for a [reverse false claim].”). Myers argues that this reasoning is not sound because subsection (G) requires repayment of any obligation, whether or not derived from false statements or records, and “obligation” is defined as the “retention of *any* overpayment.” 31 U.S.C. § 3729(b)(3). But the definition of “obligation” also requires the existence of an “established duty,” and here the only alleged “established duty” is founded on Defendants’ alleged false statements and records. The Court agrees with the reasoning of the decisions cited above that the statute should not be interpreted to permit such a redundancy. Thus, Count III is dismissed.

## II.     Up-Coding

Myers’s complaint includes two separate theories of liability under Counts I and II: (1) claims and records falsely stating that certain patients were homebound; and (2) “up-coding” certain claims for payment to show that Myers spent more time with patients than she actually did. Addressing the “up-coding” theory first, Myers provides insufficient detail to support this claim. She fails to identify the patients whose care she “up-coded,” or even a general time period when these up-coded claims were submitted. Myers identifies specific patients who Defendants falsely certified as being homebound. But she does not indicate in her complaint that these were the same patients Defendants up-coded. Myers’s allegations about fraudulent up-coding lack the particularity necessary to satisfy Rule 9(b), and are dismissed.

### III.    Knowing Submission of False Claims

In addition to her "up-coding" claim, Myers alleges that Defendants submitted claims and records falsely certifying that certain patients were homebound. "To establish civil liability under the False Claims Act [§ 3729(a)(1), subsections (A) and (B)], a [plaintiff] generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false." *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 822 (7th Cir. 2010). Defendants argue that Myers has failed to sufficiently allege that (A) they made statements or submitted claims to the government; (B) that those claims were false; and (C) even if false claims were submitted by Defendants, that they did so knowingly.

### A.    Submission of Claims

Defendants first argue that Myers failed to "allege[] any specific facts showing that Defendants . . . *actually* presented a false claim or made a false statement to the government." R. 39 at 4 (emphasis added). But at this stage of the case, Myers does not have the burden to produce evidence that would enable the Court to ascertain whether Defendants *actually* submitted false claims to Medicare. Myers simply has to plausibly *allege* these facts, and she has done so. *See Lusby*, 570 F.3d at 855 ("To say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement).") (emphasis in original).

Defendants also contend that Myers's claims must fail because she "has failed to include the date on which any claim was submitted; the content of any claim; the identification number of any claim; who submitted any false claim to the government; what amount of reimbursement improperly was claimed from the government; or when or where those claims were submitted." R. 39 at 5. This amounts to arguing that Myers must "present, or even include allegations about a specific document or bill that the defendants submitted to the Government," which the Seventh Circuit has held is not required. *United States ex rel. Presser v. Acacia Health Clinic, LLC*, 836 F.3d 770, 777 (7th Cir. 2016). Myers is a nurse who has knowledge about Defendants' business practices. This knowledge makes plausible her allegation that "Defendants submitted or caused to be submitted thousands of false claims per year to Medicare." R. 13 ¶ 70. As the Seventh Circuit held in *Presser*, "[c]onsidering [the plaintiff's] position as a nurse practitioner, a position that does not appear to include regular access to medical bills, we do not see how she would have been able to plead more facts pertaining to the billing process." 836 F.3d at 778. Myers alleges specific patients who were provided homebound services even though they were not eligible, and the dates on which those services were provided. Although she does not allege the dates the claims were made, or other specific information about the claims themselves, the information Myers has alleged is sufficient to plausibly allege that Defendants submitted claims for payment to the government, and for Defendants to defend against these allegations.

Moreover, Defendants should know the answer to the question of whether they submitted claims to Medicare on behalf of the patients identified in the complaint. If Defendants knew that they never actually submitted Medicare claims for home health services provided to the twelve named patients, Defendants could have sought early summary judgment based on those records, and remain free to do so in the future. It is plausible, and in fact likely, that Defendants submitted Medicare claims for services provided to the twelve patients. The real question in this case will be whether those patients were properly certified as eligible for those services under Medicare.

## B.    Falsity of Claims

As noted, claims under the False Claims Act sound in fraud such that they must satisfy the pleading standard of Federal Rule of Civil Procedure 9(b). *See Thulin*, 771 F.3d at 998. That rule requires a plaintiff to "state with particularity the circumstances constituting the fraud." Defendants argue that Myers's "failure to explain how any of [the patients she identifies] were not homebound is absolutely fatal to her claims under Rule 8 or Rule 9(b) pleading standards." R. 39 at 8. "Without facts showing that these patients were not homebound, i.e., the 'what' of the alleged fraud, [Myers] cannot possibly allege that Defendants . . . presented false claims or records to the government for reimbursement." *Id.*

Myers, however, has certainly alleged the "what" of her fraud claim. The "what" is the certification that the patients were homebound. Defendants' real argument is that Myers has not sufficiently alleged *why* those certifications were

false. In other words, Defendants argue that Myers has insufficiently alleged that the certifications were in fact *false*.

In support of this argument, Defendants cite the Seventh Circuit's decision in *Presser*, in which the court expressly relied on a plaintiff's failure to plead *why* certain certifications to Medicare were false in dismissing the claims. 836 F.3d at 779. The issue in *Presser* was whether the defendants' procedures and policies for patient care were "medically necessary" such that they were eligible for Medicare reimbursement. *Id.* The court in *Presser* found fault with the plaintiff's failure to "provide any reasons *why* these treatments actually were unnecessary other than [her] personal view." *Id.* (emphasis in original). The courts held that "without an ascertainable standard or more context," the plaintiff's allegations did "not suffice" to demonstrate why the alleged certifications were false. *Id.* at 781.

*Presser's* holding is somewhat in tension with Seventh Circuit precedent that Rule 9(b) does not require a plaintiff to allege *why* a statement is false. *See United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 780 (7th Cir. 2016) ("Unlike the Ninth, Sixth, and Second Circuits, we have never demanded that a plaintiff explain in her complaint *why* the claim was false.") (emphasis in original).[1] But a

---

[1] Indeed, *Presser* appears to be the only instance of the Seventh Circuit requiring a plaintiff to plead *why* a statement was false in order to satisfy Rule 9(b), outside the context of securities fraud which implicates not just Rule 9(b), but the special pleading standard of the Private Securities Litigation Reform Act. In fact, Judge Hamilton dissented from this aspect of the decision in *Presser* on the basis that he believed the majority was applying a pleading standard that comes "close to applying the special pleading standard" from the PSLRA. 836 F.3d at 783; *see also id.* at 782-83 ("With respect, the majority's insistence on an external standard or 'context' goes beyond the requirements of Rule 9(b). The circumstances of the

13

closer examination of the particular allegations in *Presser* diffuses this tension. Whether a procedure or policy is medically necessary is a determination based in professional judgment or opinion. It can be good or bad; helpful or harmful; effective or ineffective. But professional opinions are only said to be *false* if they are given in bad faith—i.e., the opinion is given knowing that it is false. Generally, an allegation of the "knowledge" element of an FCA claim is not subject to Rule 9(b)'s heightened standard. But at issue in *Presser* was not simply the defendant's knowledge of a statement that was otherwise sufficiently alleged to be false according to Rule 9(b). Rather, because the certification of medical necessity at issue in *Presser* was based on an opinion, the defendant's knowledge of the falsity of the certification was

---

alleged fraud have been alleged with particularity here. We have long rejected demands for more than the 'who, what, when, where, and how' under Rule 9(b). The majority seems to demand that the [plaintiff] plead evidence or in essence prove her case in the complaint."). In several cases, the Seventh Circuit has described the Rule 9(b) standard as requiring plaintiffs to allege why a statement in false. *See Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014) ("[The complaint] charges [the defendant] with a form of fraud, so we would expect its complaint to allege with particularity the nature of the grievance—what [the defendant] said and *why* it is false.") (emphasis added); *N. Am. Agr., Inc. v. Tulsa Screw Prod. Co.*, 1991 WL 229971, at *2 (7th Cir. Nov. 7, 1991) ("[A] fraud complaint must identify particular statements and acts and specify *why* they are fraudulent, so that conclusory allegations subject the pleader to dismissal.") (emphasis added); *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990) ("The plaintiff must identify particular statements and actions and specify *why* they are fraudulent.") (emphasis added); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir. 1987) ("This does not identify a single statement of [the defendant] or specify *why* that statement is fraudulent. It will not do." (emphasis added) (*accord Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chi.*, 927 F.2d 988, 992-93 (7th Cir. 1991))). But in *Hanna*, the Court dismissed these statements as "informal" language, and emphasized that its precedent addressing Rule 9(b) always references "the first paragraph of any newspaper story" as including "the who, what, when, where, and how," and also always conspicuously omits "the why." *See Hanna*, 834 F.3d at 779 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

necessary to sufficiently plead the falsity element of the claim. In other words, whether the certification of "medical necessity" was false was dependent upon whether the defendant knew the certification was false when it was made; and since the defendant's knowledge was the foundation of the plaintiff's allegation that the certification was false, the plaintiff was required to plead the defendant's knowledge with particularity. The court in *Presser* reasoned that the way to demonstrate that the defendant knew its opinion was false was to allege a standard against which the defendant's opinion could be said to be so "unusual" as to constitute a departure of professional norms. This is what was lacking in *Presser*, and which made her allegations of falsity insufficient. *See* 836 F.3d at 780 ("[The] complaint fails to demonstrate how [the defendant's] policies compare to other clinics or could otherwise be understood as 'unusual.'"). The court in *Presser* held that it is important to hold plaintiffs alleging the falsity of an opinion to an external objective standard, because a plaintiff's opinion or "perspective may be colored by considerable bias or self-interest, such as in the case of a disgruntled employee." 836 F.3d at 780. Since the plaintiff in *Presser* failed to identify such a corroborating standard, and were dependent upon the plaintiff's opinion, rather than her personal knowledge of facts, the court held that her allegation that the defendants' policies and procedures were not medically necessary was insufficient to state a claim that satisfied Rule 9(b).[2] Thus, "the why" required in *Presser*—an objective standard

---

[2] The *Presser* decision was in accord with "the prevailing view of courts . . . that contradiction based on clinical judgment or opinion alone cannot constitute falsity under the [FCA] as a matter of law." *United States ex rel. Groat v. Boston Heart*

corroborating the plaintiff's *opinion* of falsity—is not precisely analogous to "the why" that the Seventh Circuit generally does not require of plaintiff's pleading under Rule 9(b)—i.e., verification of the plaintiff's *personal factual knowledge* of falsity.

Defendants argue Myers's allegations are analogous to the allegations in *Presser* because Myers's allegations "are based entirely on subjective medical decisions," in that "[i]t is certainly conceivable that based on that same set of facts, [Myers] and [Defendants] may have a difference of opinion regarding whether a patient is homebound." R. 39 at 8. The Court disagrees. Myers's allegations that the twelve patients at issue were not homebound is not dependent upon her opinion, but upon her observations of their particular, factually verifiable characteristics. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 377 (4th Cir. 2008) ("[S]ubjective interpretation of . . . imprecise . . . provisions" cannot "be a false statement under the FCA." Rather, "fraud may only be found in expressions of fact

---

*Diagnostics Corp.*, 255 F. Supp. 3d 13, 27-28 (D.D.C. 2017) (citing cases); *see also U.S. ex rel. Morton v. A Plus Benefits, Inc.*, 139 Fed. App'x 980, 983 (10th Cir. 2005) ("Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false."); *United States v. St. Mark's Hosp.*, 2017 WL 237615, at *9 (D. Utah Jan. 19, 2017) ("[The plaintiff] alleges that some of the [surgical procedures] performed were medically unreasonable and unnecessary because they were performed on patients with an elevated risk of stroke but who had not yet suffered a stroke or to treat chronic migraines. But . . . these allegations are based on subjective medical opinions that cannot be proven to be objectively false."); *cf. U.S. ex rel. Hixon v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1190 (8th Cir. 2010) (dismissing a FCA claim where there was a "reasonable interpretation" of the obligation in question that undermined the alleged falsity of the defendant's certification of compliance with that obligation, because where there is "no authoritative contrary interpretation" of the relevant obligation, the defendant "could not have acted with the knowledge" of its falsity).

which (1) admit of being adjudged true or false in a way that (2) admit of empirical verification."); *see also United States v. Savannah River Nuclear Sols., LLC*, 2016 WL 7104823, at *14 (D.S.C. Dec. 6, 2016) ("[T]he relevant inquiry is not merely whether the underlying contractual or regulatory provision is subject to dispute; the relevant inquiry is whether the provision is amenable to judicial construction in a way that a court is able to determine whether an FCA defendant's claims comply with the provision."). Whether a patient is homebound is not a matter of opinion. Rather, it is a matter of fact determined according to the regulatory standard. For purposes of this motion, the Court must believe Myers's observations that the twelve patients do not meet the standard for being homebound. Unlike the claims regarding medical necessity in *Presser*, whether a patient is homebound is tethered to facts and is not directly dependent on medical opinion. Myers alleges that she treated the twelve patients at issue and so has personal knowledge as to whether they met the regulatory standard for homebound. This distinguishes Myers's claims from those at issue in *Presser*, and instead puts them in the category of claims for which the Seventh Circuit has not required plaintiffs to plead "the why" under Rule 9(b). *See Hanna*, 834 F.3d at 780.

Defendants argue Myers has made no allegations about the particular characteristics of seven of the twelve patients she claims were not homebound. But the patients' particular conditions are only relevant to the ultimate resolution of the merits of Myers's claims. At this stage of the proceedings, Myers simply must allege false certifications with particularity. That she has done by identifying particular

patients, and by alleging that she observed that these patients are not homebound according to the regulations. Whether Myers is right and Defendants' certifications meet the summary judgment standard of being "objectively false" is a question that can only be answered with discovery. *See Yannacopoulous*, 652 F.3d at 836 (a plaintiff must ultimately prove "objective falsity" to prevail on a FCA claim). Myers does not have to allege facts demonstrating that each patient is "objectively" homebound at this stage of the proceedings.

Defendants also argue that the specific allegations Myers makes about five of the patients do not preclude the possibility that they are homebound and that any certifications to that effect were true. But of course, that is not the standard on a motion to dismiss. Just because the particular facts as alleged leave open the possibility that some of the patients are homebound does not mean that Myers has failed to plausibly allege with particularity that the patients were not homebound.[3]

---

[3] The Court acknowledges that at least two other district courts have dismissed FCA claims in which a plaintiff simply alleged that patients were not homebound with facts insufficient to determine the objective truth of that allegation. *See United States v. E-Med Source of Fla., Inc.*, 2015 WL 6742059, at *2 (M.D. Fla. Nov. 3, 2015) ("The regulations specifically state that any travel or absence from the home to 'receive health care treatment,' including regular absences for 'therapeutic, psychosocial, or medical treatment in an adult day-care program . . . shall not disqualify an individual from being considered [homebound].' [The plaintiff] alleges that [the defendant] billed Medicare for home health services for patients who lacked home addresses, according to their hospital discharge papers, and many of the patients sought psychiatric treatment in the community. These allegations are not sufficient to establish that [the defendant] violated Medicare policies, as they are consistent with patients meeting the definition of homebound and receiving health care treatment in the community."); *U.S. ex rel. White v. Gentiva Health Servs., Inc.*, 2014 WL 2893223, at *15 (E.D. Tenn. June 25, 2014) ("[The plaintiff] discusses two patients who were certified as homebound despite frequently driving their cars. Being bedridden is not necessary for a patient to be homebound;

## C.     Knowingly Submitted Claims

Defendants argue further that even if Myers has sufficiently alleged false claims, she has failed to allege that Defendants made those claims knowing they were false. The False Claims Act does not require a specific intent to defraud; rather, a defendant can be liable for a FCA violation who acts with "deliberate ignorance" or "reckless disregard" of the truth. 31 U.S.C. § 3729(b)(1)(ii)-(iii); *see Univ. Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) ("The Act's scienter requirement defines 'knowing' and 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'" (citing 31 U.S.C. § 3729(b)(1)(A))). Further, Rule 9(b)'s heightened pleading standard does not apply to "knowledge" and "intent."

Defendants allege that Myers's allegations "lump" them together so it is not possible to ascertain from the complaint "who" is alleged to have made the claims in question, and by extension whether they did so knowingly. *See* R. 39 at 5 n.6.[4] But

---

a homebound patient may still leave the home occasionally under certain circumstances. There is not enough factual information in the complaint to determine whether these two patients failed to meet the homebound requirements. Without this fundamental information, this allegation cannot survive Rule 9(b)'s more stringent pleading requirements."). As discussed, however, the Court disagrees that the *possibility* that these patients were in fact homebound (or as Defendants put in this case, that it is "conceivable," R. 39 at 8) is a sufficient basis to hold that the plaintiffs failed to plausibly allege that the certifications were false.

[4] The case Defendants cite to support this argument dismissed a complaint because it "improperly lumps defendants together by failing, for example, to specify which defendants allegedly committed which wrongful act(s) [and] by failing to specify which counts are asserted against which defendants." *U.S. ex rel. Dolan v. Long*

clearly, Myers is alleging that all Defendants are liable for all the alleged claims. Defendants do not argue that it is impossible for more than one person to share liability for making the same false claim.

Here, according to Myers's allegations, Dr. Kaplan was her supervisor and the physician who made the certifications. Myers also alleges that he knew that the certifications at issue were false. Schneider was also Myers's supervisor and had the same knowledge. Myers alleges that Schneider instructed her to use incorrect Medicare codes to claim higher reimbursement. This allegation of Schneider's knowledge of one kind of Medicare fraud permits the reasonable inference that he had knowledge of the alleged false certifications regarding homebound patients (even if it is insufficient by itself to support Myers's up-coding theory). Additionally, both Schneider and Anfield were officers of the defendant companies. Even if they did not have actual knowledge of the false claims, their lack of such knowledge permits an inference that they acted with reckless disregard of the truth. Defendants argue that Myers's failure to allege that "she documented that these patients were not homebound or that she even expressed her opinion to Defendants," R. 39 at 12, means that Myers has failed to allege that Defendants acted knowingly. Regardless of this specific omission, the allegations of the complaint as a whole are sufficient to plausibly allege that Defendants acted knowingly.

---

*Grove Manor, Inc.*, 2014 WL 3583980, at *4 (N.D. Ill. July 18, 2014). There is no such lack of clarity in Myers's complaint.

Therefore, Defendants' motion to dismiss Myers's claims that Defendants falsely certified that the patients at issue were homebound is denied.

## IV. Retaliation

In addition to her FCA claims, Myers also alleges that Defendants violated the Illinois Whistleblower Act when they fired her in retaliation for her refusal to violate federal regulations. Myers makes the following allegations in support of this claim:

> On April 2, 2014 Myers saw patient DM40 a patient of Midwest Home Health. After being advised by DM40 that DM40 already had a home doctor, Myers decided not to enroll this patient.
>
> Sometime prior to Myers termination of employment with [ADH] in April 2014, Myers was instructed to see patients for no more than 10 minutes. On or about April 2014, Myers advised [ADH] that she could not see elderly patients for home physician visits without spending more than 10 minutes with the patient.
>
> The lowest [Medicare] code for home physician visits for established patients, [Medicare] Code 99347, states that a physician typically spends 15 minutes with the patient.
>
> As a result of Myers' refusal to enroll patient DM40, and refusal to see patients for less than 10 minutes, yet submit claims under [Medicare] Codes which reflect that the physician spent more than 10 minutes with the patient, both of which Myers believed would violate Federal laws, rules, or regulations, Myers was not assigned any further patients from Midwest Home Health and was fired from her employment with [ADH].

R. 13 ¶¶ 71-74.

The Illinois Whistleblower Act provides in relevant part that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that

would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. Myers argues that by "enrolling" a patient who already had a home doctor she would have been party to "double enrollment . . . [which] would have result[ed] in double billing for the same services." R. 56 at 14. But Myers cites no federal regulation preventing a patient from receiving home physician services from two different providers. Thus, she has not demonstrated that enrolling patient DM40 would have constituted a violation of a federal regulation, and she has failed to state a claim for an Illinois Whistleblower Act violation based on this allegation.

Defendants argue that Myers has similarly failed to identify a federal regulation requiring patient visits of more than ten minutes. Defendants do not deny that code 99347 provides that "a physician typically spends 15 minutes with the patient." R. 39 at 15. But they argue that this does not mean that a 15 minute visit is required for use of code 99347, and point out that "Medicare distinguishes codes which are described by a typical or average time spent with a patient and codes that require a threshold or minimum amount of time with the patient," with the implication that code 99347 only suggests a typical time and does not set a minimum time. *See* R. 39 at 15 n.12. Defendants may be correct that a visit of ten minutes or less can still satisfy code 99347, but the Court cannot make such a holding on the current record. Defendants have not cited any authority directly addressing application of code 99347, or Medicare codes in general, and the Court suspects that opinion testimony of some kind will be necessary for the Court to

decide this issue. Therefore, Defendants' motion to dismiss Myers's Illinois Whistleblower Act claim is denied.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss, R. 38; R. 41; R. 44; R. 49, are denied with respect to Counts I and II based on Myers's claims about false homebound certifications. The motions are also denied with respect to Count IV to the extent it is based on Myers's theory of being required to falsely claim that she treated patients for longer than she actually did. The motions are granted with respect to Count III; Counts I and II to the extent they are based on "up-coding"; and Count IV to the extent it is based on Myers's "double enrollment" theory of liability. Count III is dismissed with prejudice. The alternative theories of liability for Counts I, II, and IV are dismissed without prejudice. If Myers believes she can cure the deficiencies the Court has identified with these theories she may file a motion for leave to replead by Monday, April 2, 2018 (which should be noticed for April 4), supported by a brief of no more than five pages, and attaching the proposed amended allegations. Defendants should not responded unless the Court so orders. A status hearing is set for Wednesday, April 4, 2018, at which the parties should be prepared to set a discovery schedule.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 22, 2018